## J. M. HUDSON, Adm'r. of B. C. Brown v. N. M. CONWAY et al.

SALE OF LAND. *Rescission. Redemption. Dower.* C executed a deed of trust to secure F first, and then B. C died, and then trust was foreclosed. F purchased the land for his debt. B redeemed and sold his interest to the widow of C, and this bill is filed by her, asking to set aside sale upon the ground that she was mistaken as to her right of dower. *Held*, that after ten years' acquiescence in the purchase, a mistake cannot be made the basis of a rescission. There must be made out a clear case of fraud or misplaced confidence. B having conveyed only his interest in the land, the widow is entited and will be allowed dower.

### FROM HENRY.

Appeal from the Chancery Court at Paris. JOHN SOMERS, Ch.

A. McCAMPBELL, CARUTHERS & MALLORY, J. N. THOMASON and J. M. CLARK for Hudson, Adm'r.

COLE & SWEENEY for Conway.

FREEMAN, J., delivered the opinion of the court.

The original bill was filed to enforce a vendor's lien for balance of unpaid purchase money, the note having been given by the respondent to B. C. Brown of date 13th of April, 1868, the bill having been filed about the 5th of February, 1878, Brown having died in November, 1875.

. Respondent files a cross-bill in which she adds that, on the facts stated, that it be decreed, that she had redeemed the land from parties who had purchased under a trust deed, as next friend of her children, and an assumed redemption by Brown should inure to the benefit of her children, as if she had paid the money to the Fraziers, the purchasing creditors, after paying Brown's estate the money due said creditors, and Brown's estate be compelled to account for any balance due on this basis—and her notes given up and cancelled—and if not this specific relief, then for a recission and dower—and for general relief.

The facts necessary for the understanding of these questions are substantially as follows:

In 1861, Thomas H. Conway, the husband of respondent, made a deed of trust, in which he conveyed the house and lots in controversy, together with a negro woman and children, to one Frazier, to secure certain debts due Frazier, and B. C. Brown, the debts of Frazier being preferred—Brown next; it being then deemed certain that the property was ample security for the amount. During the war Conway was killed, and afterwards, May 26, 1866, the house and lot was

sold, and three of the Fraziers became purchasers, bidding the amount of the debt of the trustee, Constantine Frazier.

The matter stood thus till the 13th of April, 1868, a little over a month before the time when the right to redeem would expire, when Brown perfected, as he claimed, the right to redeem the land, by depositing the amount of the bid of the Fraziers, with J. M. Hudson, who, we take it, was clerk of the circuit court at the time, though this fact is assumed rather than proven—at any rate, it is certain, that in pursuance of this, the Fraziers, being out of the State, went on and made him a conveyance of the property as upon redemption, and recognized the fact that he had redeemed from them. This conveyance, however, was not actually signed for some months after the 13th of April, the time when Brown claims to have redeemed—but bears that date—evidently the signatures being later, which was caused by delay in getting them to the parties.

We need but say here, that the bill assumes that there was no redemption in fact, or if there was, that Brown had no right, as a creditor by deed of trust, to redeem from the Fraziers until after sci fa—based on judgment against the administrator, against the lien.

The principle settled by this court, Bledsoe et al v. McCorry, 2 Baxt., 127, that a creditor had the right to redeem without proceeding against the lien, authorizes any party who has such a right under the statute, a creditor by and of trust as well as one by judgment.

This being so, it is clear, that the Frazier's having submitted to a redemption by Brown, and having conveyed the land to him, he must hold it as such a creditor, and is entitled to all the rights of one, the whole transaction being clearly one in perfect good faith. Assuming this to be true, it is necessary to make an additional statement. On the 13th day of April, 1868, Brown and Mrs. Conway, acting on the assumption that he had so redeemed, had paid Fraziers their money, and held the land as such, having advanced the amount of his own debt on it, making upwards of $4,300, then on the property, agreed on the purchase of the same by respondent, he taking a small strip off the lots, at an agreed price, and she paying him $1,000 cash, and giving her note for say $3,000, with interest from date, promising her that he would never press her for payment, which he seems to have faithfully carried out. Mrs. Conway kept a boarding house, and paid as she could, as appears by sixteen credits on the note in his lifetime, varying from $30 to $180, and after his death she paid two additional payments to his administrator. It is very clear, from the proof, that the arrangement was entered into on the part of Brown—who was a man of fortune—to aid Mrs. Conway, at the same time hoping to get his money; the leading idea with her being to secure her home in which she might live with her children, and support them by a boarding establishment. Brown gave her an obligation to make title on payment of her note, reciting the fact that he had redeemed the land, binding himself to convey,

on such payment, "all his right, title, claim and interest, in and to said lots, and parts of lots, etc." It is assumed in the proof that Brown thought or claimed that the widow was not entitled to dower, and the testimony would probably sustain this view, at the same time this is not clear, as it is shown that her brother took the advice of counsel, Mr. Lamb, before this, who informed him she was entitled to dower, and it is pretty clear she had been told this. The language of the bond seems fairly to imply that he did not claim an absolute, exclusive, unincumbered title to the whole lots, as it only binds to convey "all his right, title, claim and interest."

After about ten years acquiescence in the purchase, and the death of the other party who knew best of the facts—we do not think the mistake—even if it occurred—can be the legal basis on which a recission could be asked, unless there could be made out a clear case of fraud, or misplaced confidence betrayed by the vendor, and the rights of the vendee either concealed from her, or her eyes closed by her confidence and trust in her vendor.

The fact remaining in doubt, whether she acted on the idea that she was not entitled to dower, and certainly doubtful as to whether Brown so represented, after such acquiesence relief ought not to be given on this ground, especially as it is clear she has not been deprived of any right she possessed, and may still have her dower right in tact. In addition to this, her plea of the statute of limitation of six years, protects her from a personal judgment for the balance

due, and the complainant can only look to the lien for satisfaction.

Without going into the details of the proof, or discussing at length the legal propositions debated by counsel, we think it will suffice to state our conclusion as the result of a careful examination of the record.

We think it clear, that the lot was sold by Brown, and bought by respondent, with the feeling at the time, that it was conferring a benefit on respondent, and with the design to secure her, what was then deemed a valuable home—that he did not intend to press her for payment—and the probability is, that the rents for most of, if not all the time, have been considerably more than the interest. If Brown had lived, we can see clearly, this cross-bill would never have been filed, nor its matter presented before a court. The change of circumstances—unexpected—has, no doubt, colored the views now entertained by respondent, of what actually occurred between the parties, as well as their motives and purposes.

Brown had the legal title, and held it subject to his debt, either as a redeeming creditor or purchaser, with a view of securing his debt. Holding the legal title as he did, with his debt secured by the deed of trust in addition, no court would have, or could rightfully, have divested him of his title, without first discharging his debt, in favor of Conway, had he been alive, nor in favor of his heirs after his death, who stood in his shoes: See *Williams* v. *Love*, 2 Head, 80–86,

especially the case of *Johnston, trustee* v. *Napier et al.,* referred to in that case.

The widow of Conway, proposing to redeem before the expiration of the time of redemption, if she had done so, would have held the land charged with an implied·trust in favor of the heirs—subject to a lien for reimbursement: *Clark* v. *Cantrell et al.,* 3 Head, 202, *et seq.*; but might have so redeemed if she chose for herself after that time. She chose to purchase, in fact, under the circumstances, and as we see no evidence of fraud, and if there was a mistake as to her dower right, inasmuch as that may be given her, we do not think there can be a·recission after the lapse of time, and entire and active acquiescence on her part in what had been done, especially after the death of the vendor.

We think she is entitled to dower in the house and lots, her husband dying before foreclosure.*

The result is, that complainant is entitled to enforce his lien upon the interest by him agreed to be sold, that is, all his own right and title in the lots, but no more, that the widow, the complainant, is entitled to have her dower out of the property, and the same must be either sold subject to her dower, or the same laid off or the dower given out of the proceeds as may be deemed best to her interest by the chancellor. A decree will be drawn in accordance with this opinion, and the case remanded to the chancery court to be further proceeded with. Costs of this

---

* See foot-note in the case of *Perkins* v. *McDonald,* 3 Baxt., page 343.

court will be divided between complainant and defendant, and of the court below, out of the funds. Future costs as the chancellor may direct.